# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 18, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1703**

STATE OF WISCONSIN

Cir. Ct. No. 2019TP120

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.G.R., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

O.F.,

      RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed.*

¶1 DONALD, P.J.[1] O.F. appeals the order terminating his parental rights to his daughter, J.G.R. O.F. contends that he was deprived of effective assistance of counsel because his trial counsel violated his duty of confidentiality and loyalty. For the reasons discussed below, we affirm.

## BACKGROUND

¶2 On July 17, 2019, the State filed a petition to terminate O.F.'s parental rights to J.G.R.[2] The petition alleged that O.F. had failed to assume parental responsibility. According to the petition, O.F. was J.G.R.'s adjudicated father, but had never lived with her, visited with her, inquired about her well-being, provided support for her, or acted as a caregiver to her.

¶3 An initial appearance was scheduled for August 15, 2019. O.F. did not receive notice of the hearing, and as a result did not appear.

¶4 An adjourned initial appearance was held on September 12, 2019. O.F. did not appear, and the State requested a default finding, which the circuit court did not address.

¶5 A third adjourned initial appearance took place on October 24, 2019. O.F. again did not appear, and the State renewed its default request. Although O.F. was notified of the court date over the phone by the ongoing case manager, the circuit court declined to default O.F. at that time due to a concern that O.F. had

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The petition also sought to terminate the parental rights of J.G.R.'s mother, S.R. Her rights are not on appeal in this action. As a result, this decision focuses on the facts and the proceedings as they relate to O.F.

not received a copy of the petition. The court ordered the Division of Milwaukee Child Protective Services to attempt contact with O.F. at least three more times to get his current address.

¶6 A fourth adjourned initial appearance took place on November 25, 2019. O.F. did not appear and the circuit court found him in default. The court based its default finding on the fact that the case manager had further contact with O.F. and O.F. refused to provide his address to her.

¶7 Between January 3, 2020, and July 15, 2021, multiple hearings took place relating to J.G.R. O.F. did not appear.

¶8 On August 26, 2021, O.F. appeared at the dispositional hearing. O.F. said that he had reasons for his nonappearances, and requested counsel. The circuit court instructed O.F. to go to the public defender's office to obtain counsel, and gave him a new court date of September 27, 2021 at 8:30 a.m. The court warned O.F. that if he failed to appear at the next date, the default order would stand.

¶9 Neither O.F. nor his counsel appeared at the next scheduled court date on September 27, 2021. The following day, September 28, 2021, trial counsel sent a letter to the court explaining that O.F. had contacted him on the afternoon of September 27 because O.F. had incorrectly believed that the hearing would take place at 2:00 p.m. Trial counsel wrote that "counsel at this time is working on the sole issue of [O.F.'s] default."

¶10 At the next hearing on October 18, 2021, O.F. appeared via videoconference. The circuit court noted that O.F. had been previously defaulted. The court indicated that it was prepared to set a date for prove-up and disposition.

The court asked O.F.'s trial counsel "Would that be acceptable to you and your client?"

¶11    Trial counsel responded that he did have a lengthy conversation with O.F. and O.F. was asking that the default finding be vacated. Trial counsel stated that they "talked a lot about good cause … and the egregious finding for default and I asked him to provide me with a written notarized statement with good cause reasons for having not appeared in this matter." Trial counsel stated that "[i]t was my goal to file that motion with that information so the [c]ourt could consider that but I did not receive that from [O.F.]" Trial counsel additionally stated that, "[n]ow, he did give me some reasons but I would be more comfortable providing them either on the record or in a sworn format just to ensure there is not later a good cause explanation that were [sic] not provided."

¶12    The circuit court indicated that it would set a date for disposition and prove-up. O.F. could "participate in the dispositional hearing if he chooses to do so but the default will stand." The court stated that it was not persuaded to vacate the default that was previously issued.

¶13    At the next hearing on January 12, 2022, O.F. was not present at the start of the videoconference. The court asked trial counsel if he would "shed any light on that." Trial counsel responded:

> Judge, I spoke with [O.F.] back on November 11th and I also expected him to follow up with what expected to be a change of address for him along with something he was going to be sending me. I did not hear from him and I followed up trying to establish a connection between [the case manager] and him so they could arrange for her to investigate him and visitation potentially and those kinds of issues, that was apparently followed up by [the case manager] and my client and they had an appointment on January 3rd but my client was unavailable for that meeting. I called [O.F.] last Friday to try and figure out where he

> was and what was going on as well as trying to prepare for today. I did not get a call back even though I left a voicemail that was very detailed. [The case manager] late in the afternoon yesterday had provided me with some case update notes as well as an indication that she had actually spoken to him last night so I don't know why he hasn't returned my call. He represented to [the case manager] that he would be here today but I can't speak for his non-appearance today.

The court indicated that based on trial counsel's presentation, "I don't see the effort being made by [O.F.]." O.F. eventually arrived late to the hearing, and the case was set the next day for prove-up due to interpreter issues.

¶14 The following day, January 13, 2022, O.F. appeared late. Prior to O.F.'s appearance, trial counsel stated that there were "a couple of things" he would like to put on the record." Trial counsel stated that "I know [O.F.] is not present but I mentioned previously about [O.F.] possibly filing a motion to vacate the default and all I can say for the record is we never got to that point. I didn't get the information that I needed[.]" The circuit court then proceeded to take testimony from J.G.R.'s case manager. The court found that the State had proven the failure to assume parental responsibility ground, and that O.F. was unfit.

¶15 At the next hearing on February 24, 2022, O.F. appeared via his trial counsel's speaker phone. Testimony for the dispositional hearing commenced. The hearing was continued to April 8, 2022. The court ordered O.F. to appear at the next hearing by video.

¶16 On April 8, 2022, O.F. appeared by speaker phone but was unable to appear by video. The court stated that: "I think the only solution to this issue is for me to set an in person hearing[.]" Trial counsel agreed, stating that O.F. "has a lot of trouble appearing by Zoom and I've also had a lot of trouble getting certain

information he said he sent to me which he has not[.]" Trial counsel also stated that:

> I have asked and advised [O.F.] that if he is going to want me to consider anything I would like that a week ahead of time so we can share that information. I don't know what the problem is or has been. He said he sent me things on Monday and I still don't have it.... I'm not trying to cast any negative light, things are difficult, things are confusing but in order to do my job I need to have things in advance, your Honor.

¶17 At that point the Guardian ad Litem (GAL) requested that O.F. be found in default. The GAL indicated that "[O.F.] was ordered to appear by Zoom and have all of those problems worked out with Zoom and secondly, he has been ordered to comply with his attorney and from what [trial counsel] just said he has not been[.]" Trial counsel stated, "to clarify, I didn't mean he is not cooperating. It's just difficult. He always stays in touch with me." The court ordered O.F. to appear at the next court date and if O.F. failed to appear, then the court would find that he is in default.

¶18 On June 24, 2022, the final date of the dispositional hearing, O.F. appeared late. After the completion of testimony, the court found that it was in J.G.R.'s best interests to terminate O.F.'s parental rights. This appeal follows. Additional relevant facts will be referenced below.

**DISCUSSION**

¶19 O.F. contends that he was deprived of effective assistance of counsel because his trial counsel breached his duty of confidentiality and his duty of loyalty during a "key stage of the proceedings—the stage at which [O.F.] was eligible to request to vacate the earlier default finding[.]"

¶20 A parent in a termination of parental rights proceeding has the right to effective assistance of counsel. *See A.S. v. State*, 168 Wis. 2d 995, 1004, 485 N.W.2d 52 (1992). A claim of ineffective assistance of counsel is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Oneida Cnty. DSS v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652.

¶21 In order to establish ineffective assistance of counsel, a parent must prove that: (1) his or her attorney performed deficiently; and (2) the attorney's deficient performance prejudiced the parent's defense. *See Strickland*, 466 U.S. at 687. However, if a parent does not make a sufficient showing on one prong of the analysis, a court need not address both components of the analysis. *Id.* at 697; *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶22 As a preliminary matter, O.F. contends that there was no need for a post-disposition motion or a *Machner* evidentiary hearing in this case. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶23 I read our case law to preclude O.F.'s argument. In *Machner*, this court stated that "it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel." *Id.* at 804. More recently, our supreme court stated that "[a] *Machner* hearing is a prerequisite for consideration of an ineffective assistance claim." *State v. Sholar*, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89.

¶24 As this court has observed, a *Machner* hearing "is important not only to give trial counsel a chance to explain his or her actions, but also to allow the [circuit] court, which is in the best position to judge counsel's performance, to rule on the motion." *State v. Curtis*, 218 Wis. 2d 550, 554, 582 N.W.2d 409

(Ct. App. 1998). Accordingly, in this case, the lack of, or a request for, an evidentiary hearing would seemingly preclude a review of trial counsel's performance.

¶25 Moreover, even if a *Machner* hearing is not required in this case, O.F.'s argument still fails based on the record. O.F. has failed to establish any prejudice. *See Strickland*, 466 U.S. at 697. Generally, under *Strickland*, to establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694.

¶26 Here, O.F. does not offer any evidence or an argument that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* Instead, O.F. contends that he need not make a showing of *any* prejudice. In support, O.F. points to *Massachusetts v. Weaver*, 137 S. Ct. 1899 (2017).

¶27 In *Weaver*, the defendant argued that his attorney was ineffective for failing to object to the violation of his right to a public trial, which is a structural error. *Id.* at 1906, 1908. The United States Supreme Court granted review to resolve whether a defendant needs to establish prejudice when a structural error is raised via an ineffective assistance of counsel claim. *Id.* at 1907. The Court concluded that when a defendant raises a public trial violation via an ineffective assistance of counsel claim, prejudice "is not shown automatically." *Id.* at 1911. Relevant to this appeal, the Court suggested that only structural errors that "always result[] in fundamental unfairness" will result in the presumption of prejudice. *Id.* at 1908.

¶28    O.F. suggests that the alleged errors here were structural errors pursuant to *State v. Shirley E.*, 2006 WI 129, 298 Wis. 2d 1, 724 N.W.2d 623, which rendered the proceedings fundamentally unfair. *Shirley E.*, however, is distinguishable.

¶29    In *Shirley E.*, the parent's attorney appeared in court, but the parent did not appear in person. *Id.*, ¶¶13-16. Due to the parent's failure to appear, the circuit court dismissed the parent's attorney, and the parent was deprived of counsel in both the fact-finding and dispositional phases of the termination of parental rights proceeding. *Id.*, ¶¶16-17, 34. The court held that the denial of the statutory right to counsel, WIS. STAT. § 48.23, constituted structural error "in the present case." *Id.*, ¶63. Thus, the total denial of counsel was deemed structural error.

¶30    Here, unlike in *Shirley E.*, O.F.'s trial counsel was not dismissed from the proceedings. Rather, O.F.'s trial counsel was present during the proceedings. O.F. does not cite any other case law or develop an argument as to how the alleged errors here might constitute a structural error when a trial attorney is physically present. This court will not develop arguments for parties. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Therefore, for the reasons stated above, I affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9